639 So.2d 1326 (1994)
Martin Luther WILSON
v.
STATE of Mississippi.
No. 91-KA-00563.
Supreme Court of Mississippi.
June 30, 1994.
Rehearing Denied August 18, 1994.
*1327 Randall L. Miller, Quitman, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC
SMITH, Justice, for the Court:
Martin Luther Wilson was convicted in Hinds County Circuit Court of the crime of business burglary and sentenced to serve six years with the Mississippi Department of Corrections. We affirm his conviction and sentence.

THE FACTS
Wilson was arrested on May 14, 1990, for burglarizing an old historic home which was not then being used as a residence but as a place to store property of the owner, Ruth Champion, and her family. Wilson was apprehended and arrested by Officers Robbie Stevens and Steve Bailey of the Hinds County Sheriff's Department.
The officers testified that at 10:10 a.m. on May 14, 1990 they were dispatched to answer an alarm on Champion Hill Road. Since the house is not immediately accessible by car, the officers parked their car and walked to the house. As they approached the house, they heard noise coming from the inside, as if someone were "rummaging around." Approximately five to ten minutes later, Wilson crawled out of a window of the house, throwing a car stereo amplifier and a magazine on the ground. When the officers stopped Wilson, he told them he had permission to be in the house because he was there for some type of "business transaction." When asked, Wilson could not tell the officers who was the owner of the house. Wilson was then arrested and taken to the Hinds County Detention Center.
Wilson was indicted for burglary under Miss. Code Ann. § 97-17-33 (Supp. 1990), commonly referred to as "business burglary" but which includes breaking and entering of buildings other than a dwelling. Wilson entered a plea of not guilty.
At trial Wilson maintained that he was at the house to meet a friend named "Jimmie Mack." According to Wilson, Jimmie Mack owed him twenty dollars and had agreed to give Wilson the car stereo amplifier in repayment of the debt. Wilson claimed Mack told him that the house belonged to Jimmie Mack's mother and that he was living there. Wilson stated that Mack gave him directions *1328 to the house and told him to meet him there on the morning of May 14, 1990. Wilson testified that when he arrived nobody answered the door, but he spotted the amplifier through an open window and took the amplifier off the bed some two to three feet from the window. Wilson denied crawling out of the window or having done more than reach inside the house.
After being found guilty as charged, Wilson perfected this appeal.

DISCUSSION
Wilson raises several issues, only one of which warrants discussion:
WHETHER THE COURT ERRED IN DENYING DEFENSE INSTRUCTION D-6 WHICH WOULD HAVE ALLOWED THE JURY TO FIND MARTIN WILSON GUILTY OF THE LESSER INCLUDED OFFENSE OF TRESPASS.
Wilson contended at trial that Jimmie Mack had told him he could have the amplifier in settlement of the debt owed Wilson. Wilson also contended that Wilson had invited him to the property to pick up the amplifier. Wilson was not able to produce Jimmie Mack at trial or even to produce anyone else other than himself who could even verify that Mack ever existed.
Wilson would have this Court reverse and remand this case for a new trial based on the failure of the trial judge to give an instruction to the jury on a lesser included offense for which there is no evidentiary basis. The lesser included offense of trespass was never argued as a defense and no proper instruction was offered.
At trial, Wilson defended on two theories: that he was not guilty of any crime because he had permission to be on the property and to take the amplifier and that the crime charged should have been "house burglary" rather than "business burglary." There is not a single indication from Wilson's testimony or any of the arguments or questions of his counsel that Wilson presented at trial a defense that he was not guilty of burglary, but at most guilty of trespass, as is erroneously contended. The only testimony from which to even surmise this defense is a single equivocal answer given by Wilson and this answer leading to this surmise was only brought out in cross-examination by the prosecution. When asked if Jimmie Mack had told him to break in if he was not there, Wilson answered: "No, he didn't tell me  he told me where the amp was and he told me, said if  he told me that if he weren't there, which I told him I would prefer that he had been there, but he said if he weren't there, he told me where the amp was gonna be and it was exactly were he told me it was."
The evidence by which a jury could find Wilson not guilty of burglary was to the effect that he had permission to be on the property and to take the amplifier. Officer Robbie Stephens testified that Wilson told him at the time he was arrested that "he was supposed to be there; that he had permission to be in the house." In his presentation of the case and on direct examination, Wilson testified that he had been given directions to the house and told to come Monday morning and that he "got the amplifier `cause he told me come get the amplifier." Wilson also testified, "I wasn't in a hurry going to the house 'cause I figured I had permission  legally (sic) permission to go to the property." Wilson's defense was meager and never presented the alternative of guilty of trespass, contrary to what is now argued.
Wilson's entire argument on appeal in support of the contention that he was entitled to a lesser included offense instruction is as follows:
The case sub judice is a perfect case for the allowance of a lesser included offense instruction of trespassing. Wilson asserts this because he steadfastly maintained his innocence of burglary, he stated he was on the property because he had been told to go there, and because he couldn't find the person who told him to go there.
Denying the lesser included offense instruction denied the jury the option of finding him guilty of a misdemeanor. Wilson may have been trespassing and an instruction on the lesser included offense should, for that reason, have been given. See Murphy v. State, 566 So.2d 1201 (Miss. 1990); Young v. State, 451 So.2d 208 (Miss. 1984); Gayles [Sayles] v. State, 552 So.2d *1329 1383 (Miss. 1989). See Clerk's papers 15, R.E. 5).
Wilson fails to state any evidence supporting an instruction on trespass or indicate that he argued this theory to the court or the jury. The most he can muster is that "Wilson may have been trespassing."
As to the propriety of granting the lesser included instruction, this Court stated in Mease v. State, 539 So.2d 1324, 1329-1330 (Miss. 1989):
We have repeatedly held that the accused is entitled to a lesser offense instruction only where there is an evidentiary basis in the record therefor. Lee v. State, 469 So.2d 1225, 1230 (Miss. 1985): Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984); Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983). Such instructions should not be granted indiscriminately. Lee v. State, 469 So.2d at 1230, see, e.g., Ruffin v. State, 444 So.2d at 840; Colburn v. State, 431 So.2d at 1114, nor on the basis of pure speculation. People v. Simpson, 57 Ill. App.3d 442, 448-49, 15 Ill.Dec. 463, 466, 373 N.E.2d 809, 812 (1978); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984).
In the case before the Court there is no evidentiary basis in the record and at best the instruction would be based purely on speculation or surmise.
In Toliver v. State, 600 So.2d 186, 192 (Miss. 1992), this Court held:
The jury was clearly and plainly instructed as to each of the essential ingredients of the crime charged, and was clearly and plainly told that unless it found Toliver guilty of every one of those essential ingredients, it must under its oath return a verdict of not guilty and discharge him. To have been entitled to a lesser included offense instruction, it was incumbent upon Toliver to point to some evidence in the record from which a jury could, other than by mere surmise, find him not guilty of the crime for which he was charged and at the same time find him guilty of a lesser included offense. Whitehurst v. State, 540 So.2d [1319] at 1327 [(Miss. 1989)]; Harper v. State, 478 So.2d [1017] at 1021 [(Miss. 1985)]; Fairchild v. State, 459 So.2d at 799.
(Emphasis in original; underlining added).
In numerous cases this Court has not hesitated to find that a lesser included instruction was not required where the instruction was not supported by the evidence. See Porter v. State, 616 So.2d 899, 909 (Miss. 1993) (Porter's version did not support instruction of simple assault in aggravated assault case.); Toliver v. State, 600 So.2d at 192 (no evidence of simple assault in rape case); Deal v. State, 589 So.2d 1257, 1260 (Miss. 1991) (court refused instruction on trespass in larceny case, ruling: "I believe that this case is all or nothing. I don't think there is any proof that shows, either by the State or by the defendant.... a lesser included offense would be authorized."); Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983) (no evidence that wounds inflicted were other than serious with great risk of death and simple assault instruction was not given); Norman v. State, 385 So.2d 1298, 1301 (Miss. 1980) ("From Norman's testimony, it is obvious, however, that he was guilty of either aggravated assault or no crime at all. The evidence did not support a `middle ground' theory."). The present case follows this line of cases. Based on Wilson's testimony he was not guilty of any crime at all. There was no evidence of a "middle ground."
In addition to lacking an evidentiary base and requiring the jury to enter into the realm of surmise, the instruction offered by Wilson has several other flaws. The instruction persistently referred to "house burglary," which is not the crime with which Wilson was charged. Miss. Code Ann. § 97-17-33 (Supp. 1991), the statute under which Wilson was charged and convicted, is often referred to as "business burglary" but, as the title indicates, the statute covers "Burglary  breaking and entering building other than dwelling house." The proof showed that the house in question was not occupied or used for a dwelling at the time. This Court in Watson v. State, 254 Miss. 82, 85, 179 So.2d 826, 827 (1965) stated:
The essence of the distinction made by the court in the cited cases between burglary of a dwelling and burglary of a building *1330 not a dwelling is that in the former the building must then be a place of human abode....
If the building is not a place where people reside, section 2043 [now Section 97-17-33] applies.
Besides being an incorrect statement of the law, the offered instruction does not set forth the elements of trespass or differentiate between the crimes of burglary and trespass. As noted in Harper v. State, 478 So.2d 1017, 1022 (Miss. 1985), "[a] sentence explaining the difference between trespass and burglary would have been appropriate." To have done less would have confused the jury. This Court has condemned confusing and misleading instructions on numerous occasions. Sudduth v. State, 562 So.2d 67, 72 (Miss. 1990); Holmes v. State, 483 So.2d 684, 686 (Miss. 1986).
As to the duty of the trial judge to reform the instruction, assuming arguendo a factual basis for the instruction exists, this Court stated in Harper v. State, 478 So.2d 1017, 1022 (Miss. 1985):
Where the disputed instruction relates to a central feature of the case and where there is no other instruction before the court which treats the matter, Thomas [v. State, 278 So.2d 469 (Miss. 1973)] holds it error to refuse an instruction on grounds that "it has been inartfully drawn." 278 So.2d at 472.
Accord, Lee v. State, 469 So.2d 1225, 1232 (Miss. 1985)
To find that "the disputed instruction relates to a central feature of the case" again requires this Court to create something in or from the record which is not there. Evidence and argument of trespass as a defense were not part of the trial and have not been argued on appeal. If this was presented to the jury it was in arguments not provided to this Court. As has been often stated, it is incumbent upon the appellant to see that the record of the trial proceedings supporting error is brought before this Court. Smith v. State, 572 So.2d 847, 849 (Miss. 1990); Walker v. Jones County Community Hospital, 253 So.2d 385 (Miss. 1971). That there is support for this contention in the omitted arguments is purely speculation.

CONCLUSION
Under the standard of Thomas and Harper the judge was not in error in failing to reform the jury instruction. Although inartfully drawn, the instruction did not relate to a central feature of the case based on the record, in addition to lacking an evidentiary base.
If a lesser included instruction can be justified much less required under the circumstances of this case then this Court should hold that a lesser included instruction should be given in each and every case. There was no error in the denial of this jury instruction. Wilson's conviction and sentence are affirmed.
CONVICTION OF BUSINESS BURGLARY AND SENTENCE OF SIX (6) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., dissents with separate written opinion, joined by BANKS, J.
DAN M. LEE, Presiding Justice, dissenting:
It is the longstanding law of this State that trespass is a lesser-included offense of every burglary. Yet, the majority finds an evidentiary basis for the elements of the crime of burglary while simultaneously denying that evidence of trespass exists. Because it is logically and factually impossible to find the elements of burglary without also finding the elements of trespass, and because the majority improperly places the burden of proving the elements of a lesser-included offense on the defendant, I respectfully dissent.

I.
This Court has long recognized the fundamental principle that a finding of evidence *1331 supportive of a burglary conviction mandates a concomitant conclusion that the defendant also committed trespass. Twenty (20) years ago, we reduced a burglary conviction to one of trespass in a prior case before this Court, stating that:

Trespass is necessarily a component of every burglary. Implicit in the verdict finding defendant guilty of burglary is the finding that he was guilty of the constituent offense of trespass. Section 97-17-87, Mississippi Code Annotated (1972). Inasmuch as the jury found the defendant guilty of trespass is conclusive, the judgment is affirmed as a conviction for trespass, and the case is remanded for sentencing on that charge.
Anderson v. State, 290 So.2d 628, 628-29 (Miss. 1974) (emphasis added).
Continuing the recognition that trespass is a lesser-included offense of every burglary, ten (10) years ago we stated that, "[t]respass is necessarily a constituent offense of every burglary." Gillum v. State, 468 So.2d 856, 861 (Miss. 1985). That maxim was later repeated in another case where we said that, "[t]respass, of course, is a lesser included offense to every burglary." Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985). See also Robinson v. State, 589 So.2d 116 (Miss. 1991).
Yet, today, the majority opines that, "[i]n the case before the Court there is no evidentiary basis in the record and at best the [lesser-included offense] instruction would be based purely on speculation and surmise." The majority fails to recognize that it is logically impossible to find evidence of burglary without necessarily finding evidence of trespass because it is "implicit" that the evidence supporting a guilty verdict for burglary also fulfills the elements necessary to find a defendant guilty of the offense of trespass. See Anderson, supra.
If, as the majority contends, the only evidence in the record indicative of trespass would be "based purely on speculation or surmise", how can the majority defend the jury's verdict of guilt for the offense of burglary if the record is absent evidence sufficient to support a contemporaneous finding of trespass? In order to sustain a guilty verdict, there must be sufficient evidence that would allow a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. United States v. Lewis, 902 F.2d 1176 (5th Cir.1990). "[B]efore a conviction of any crime may stand, there must be in the record evidence to establish each element of the crime." Fisher v. State, 481 So.2d 203, 211 (Miss. 1985) (citing Edwards v. State, 469 So.2d 68, 70 (Miss. 1985)). See also Watson v. State, 465 So.2d 1025, 1031 (Miss. 1985); Neal v. State, 451 So.2d 743, 757 (Miss. 1984). Therefore, if the jury found evidence which would support a guilty verdict for burglary, a fortiori, the jury found evidence supportive of the offense of trespass.

II.
In the case sub judice, the majority opines that Wilson, the defendant, failed to prove his own guilt for the crime of trespass, stating that, "Wilson's defense was meager and never presented the alternative of guilty of trespass.... Wilson fails to state any evidence supporting an instruction on trespass or indicate that he argued this theory to the court or the jury."
However, the proposition that Wilson should prove his own guilt for "any crime", even a lesser-included offense, is misplaced. It is an old and well-defined principle of criminal law that the burden of proving guilt by overcoming the presumption of the defendant's innocence is upon the prosecution, not the defendant. In a criminal case, the burden is upon the State to prove the defendant's guilt through evidence which satisfies each element of the charged crime. McVeay v. State, 355 So.2d 1389 (Miss. 1978). The burden of proving each element of an offense always remains with the prosecution, Heidel v. State, 587 So.2d 835 (Miss. 1991), and never shifts from the State, Brown v. State, 556 So.2d 338 (Miss. 1990).

III.
As a secondary basis for denying the lesser-included offense jury instruction, the majority implies that Wilson stated that he had "permission to be in the house" as a defense to the burglary charge. Therefore, *1332 according to the majority's rationale, it was unnecessary to grant the lesser-included offense jury instruction since "permission to be in the house" and a defense of trespass would be inapposite.
However, both the factual and legal bases for that conclusion are flawed. Without digressing into areas of the law which are, or should be, so well established that they do not warrant repetition here, it is sufficient to say that a defendant has the right to plead and argue multiple defenses, and the jury possesses the right to believe some, all, or none of a defendant's exculpatory or mitigating testimony.
Factually, the majority misreads "permission" out of context. Wilson did not plead or argue that he had permission to be "in the house". In fact, his testimony is contradictory to that assertion.
At trial, Wilson contended that he had been promised the amplifier by Jimmie Mack in exchange for forgiveness of the debt owed him by Jimmie Mack, and that was the reason that he had gone to what he had been told was the house where Jimmie Mack was living. On cross-examination, Wilson was directly asked whether he had been given permission to enter "the house". He unequivocally stated that he had not been granted such permission, as exhibited by the following trial colloquy:
Q. And this person that you say you got permission from did he tell you to go ahead and break into the house?
A. No. He told me to go to the house `cause he said he didn't have the money. He said, "I'll be there about 9 o'clock that morning." I asked him, I said, "Could you be there a little bit earlier, `cause I have to go to work?" He said, "I'll be there  I know I'll probably be there till about nine"....
(emphasis added).
There was also testimony given by Wilson and the officers who testified, that it was quite a distance from the gate at the entrance of the property to the location of the house; between one quarter of a mile and one mile. When questioned about walking that distance to the house and his activities once he arrived there, Wilson again stated that he had "permission" to be on the property, not in the house, as revealed by the following dialogue:
Q. They came up the same driveway that it took you 15 or 20 minutes to walk up in two minutes, is that what you're saying?
A. Well, quite naturally, if you're in the process of catching somebody robbing something, you're gonna be in a hurry to get there. I wasn't in a hurry going to the house 'cause I figured I had permission  legally permission to go to the property. They probably was in a hurry trying to get to the house.
....
Q. Not even that long. And yet you're saying that you didn't rummage through the house.
A. Oh, no. I had no reason to go in the house `cause there wasn't anything in there I wanted.
(emphasis added).
Therefore, factually, instead of stating that he had permission to be "in the house", Wilson testified that he had permission to be "on the property". It takes no great measure of astuteness to comprehend the difference  permission to come onto one's property is not synonymous with permission to enter into one's house, especially if one is not at home.
However, from the evidence in the record, it is quite clear that Wilson trespassed. Wilson's intent was the subject of controverted testimony. But, there was uncontradicted evidence that Wilson trespassed, even though he never stood wholly within the house. By his own admission, Wilson broke the plane of the perimeter of the window to the house, thereby invading the space within the house with part of his body. At trial, Wilson testified as follows:
A. I didn't crawl out the house. When I bend over into the window to get the amp off the bed and I had laid 
Q. You never even went into the house.
A. Well, I went  well, I'm sure everybody gonna say that I went in it, but I leaned over  over the window ledge and the bed was about  the bed was about *1333 three  maybe two and a half feet from the window.
Q. Oh, I see. So your feet were still on the ground when you reached in there and got that amplifier 
A. That's right. I was sticking out the window.
Consequently, Wilson illegally entered the house, either by leaning over the window ledge or by crawling inside the house. From the evidence presented, Wilson could have been found guilty of either trespass or burglary. The difference hinges on whether Wilson possessed a burglarious "intent" when he entered the house.

IV.
The majority correctly notes that Wilson contended that he had agreed to forgive the debt which Jimmie Mack owed him in exchange for the amplifier, and that he had gone to the house to get the amplifier from Jimmie Mack. According to Wilson, when he took the amplifier, he obtained something to which he believed he had a right to take. If believed, a juror could have found that Wilson did not possess the "intent" to commit another crime therein, when he entered the house. That conclusion would render Wilson guilty of trespass instead of burglary.
As a consequence, since there was: (1) a factual basis for finding Wilson guilty of the offense of trespass; and (2) testimony adduced at trial concerning Wilson's intent, the jury should have been allowed to decide if Wilson possessed a burglarious intent when he entered the house. Withholding the right to decide that question from the jury would be tantamount to awarding the State a directed verdict on the element of burglarious "intent", the only distinction between the crimes of trespass and burglary.
Regarding the weight and sufficiency of evidence to support a claim that intent was not present, in another case this Court stated that:
[I]f this testimony were believed, it would establish that Harper was not guilty of burglary but only of the lesser included offense of trespass.
The question is not whether the evidence was sufficient so that a rational juror could have found beyond a reasonable doubt that Harper broke into the Foster home with intent to assault but whether the evidence is so clear that no reasonable juror could have accepted Harper's theory....
....
... The only fact issues which should be taken from the jury are those with respect to which the evidence is so clear that rational jurors could not disagree. On all other material issues of fact, the jury must be instructed in the law so that they may then perform their constitutional responsibility.
Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985).
Consequently, since intent was a controverted issue, and a reasonable juror could have accepted Wilson's assertion that he believed he had a right to the amplifier, the lower court judge should have submitted to the jury an instruction on the lesser included offense of trespass. As we stated in a previous case:
Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for its decision. The instruction may be denied only if the trial court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences that may be drawn from the evidence in favor of the accused, that no hypothetical reasonable jury could find the fact as the accused suggests.
Anderson v. State, 571 So.2d 961, 964 (Miss. 1990) (citations omitted). Taking the evidence in the light most favorable to Wilson, and considering all reasonable inferences that may be drawn from the evidence in his favor, it cannot be said that "no hypothetical reasonable jury could find the fact as" Wilson suggested.
The jury should have been given the opportunity to decide the question of whether Wilson possessed a burglarious intent  the *1334 distinction between trespass and burglary. Wilson attempted to have the jury instructed on the lesser-included offense of trespass, as reflected in his proposed "Jury Instruction D-6" which stated, inter alia:
If you, the jury, find that the State has failed to prove any one of the essential elements of the crime of house burglary, you must find MARTIN WILSON not guilty of house burglary and you will proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all the elements of trespassing.
The crime of house burglary is distinguished from trespassing by the absence or failure to prove a breaking and entering with the intent to commit a felony.
In the event you find from the evidence that the Defendant is guilty of the lesser included offense of trespass, your verdict shall be as follows:
"We, the jury, find the defendant guilty of trespass."
However, the lower court judge refused to submit that proposed instruction to the jury. No other instruction was submitted to the jury which informed them of the lesser-included offense of trespass, which Wilson had a right to submit for the jury's consideration. Accordingly, "Jury Instruction D-6", or a reasonable facsimile thereof, should have been submitted to the jury.
Based upon the trial judge's decision not to submit "Jury Instruction D-6" to the jury and the failure of the trial judge to grant any other instruction informing the jury of the lesser-included offense of trespass, Wilson's right to have a "lesser-included offense" instruction on the charge of trespass submitted to the jury was not honored.

V.
As a matter of law, evidence must exist in the record indicative of the elements of trespass if evidence exists which supports a burglary conviction. However, the burden of proof with regard to proving the elements of either trespass or burglary is upon the State, and not upon the defendant.
Consequently, the jury should have been submitted an instruction on the lesser-included offense of trespass, in the event that they failed to find a burglarious intent on the part of Wilson.
Every citizen of this State should expect no less if, by happenstance, they were on trial for a crime in the courts of Mississippi. Therefore, I see no valid reason why Wilson is less deserving. Otherwise, the integrity of our judicial system is implicated. Accordingly, I would reverse the decision of the lower court and remand for a new trial.
BANKS, J., joins this opinion.