BARNES, J.,
for the Court.
¶ 1. A Coahoma County jury found Thurman Kirkwood guilty of burglary of a dwelling, fleeing or eluding a law enforcement officer in a motor vehicle, possession of a firearm by a convicted felon, and grand larceny. The circuit court determined that Kirkwood was a habitual offender and sentenced him to twenty-five years for burglary, five years for fleeing a law enforcement officer, ten years for possession of a firearm by a convicted felon, and ten years for grand larceny, all in the custody of the Mississippi Department of Corrections (MDOC). All of the sentences were ordered to run concurrently without the possibility of parole or probation. Kirkwood now appeals.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. On October 11, 2007, W.C. Smith, upon returning from Memphis, Tennessee, discovered that his trailer in Friars Point, Mississippi had been burglarized. Smith has another residence, but he spends the night in this trailer approximately every other night. He also uses this trailer as an office and a shop. Smith recalled locking the trailer when he left for Memphis. When he returned, the deadbolt was broken, and the back door was open. Missing from the trailer were Smith’s four rifles, a briefcase, and two radio scanners.
¶ 3. Smith testified that earlier that day, Kirkwood, who is acquainted with Smith, came by the trailer alone, in need of gasoline money and looking for work. Kirk-wood was driving a blue and grey van. *11 Smith informed Kirkwood that he was going to Memphis but would be back “later on,” and gave Kirkwood ten dollars. While in Memphis, Smith received a telephone call from Kirkwood asking where Smith was and when he would return to the trailer. Reginald Smith, Smith’s nephew, testified that on October 11, he saw someone driving a blue and grey van near his uncle’s trailer.
¶ 4. Also around October 11, Roy Banks, who lives in Clarksdale, Mississippi, awoke to find his blue and grey 1991 GMC Safari van missing. Banks stated he purchased the vehicle several years earlier for $8,000. His wife’s cousin saw “some guy” driving the van in the area; so he called the police.
¶ 5. Officer Steven Poer, with the Clarksdale Police Department, received a dispatch call on October 11 to be on the lookout for Banks’s missing blue and grey van. Officer Poer saw the van being driven by Kirkwood in Clarksdale; so Officer Poer turned on his blue lights and sirens. Kirkwood did not pull over, and a high-speed chase ensued. Officer Poer testified the van reached speeds between 80 and 100 miles per hour. Kirkwood drove the van in the middle of the road, ignoring traffic signals, and nearly colliding with a tractor-trailer. Eventually, Kirkwood stopped the van, exited it, and ran into the woods, where law enforcement officers pursued him on foot. He was found hiding in a field and arrested shortly thereafter. Inside the van were four rifles, a briefcase, and some radio scanners, which Smith later identified as his. Officer Vincent Ramirez took photographs of the items, which were entered into evidence. Officer Poer testified that the only person inside the van, other than Kirkwood, was a woman. She was taken to the police station but was released because she could not eommuni-cate with law enforcement as she had a hearing impairment.
¶ 6. In November 2007, a Coahoma County grand jury returned a four-count indictment against Kirkwood for burglary, fleeing a police officer, possession of firearms by a convicted felon, and grand larceny. He was charged as a habitual offender. In January 2008, a two-day jury trial was held in the Coahoma County Circuit Court. Officer Ramirez, testifying for the State, claimed to have personal knowledge that Kirkwood was a prior convicted felon in Mississippi as he had served as an investigator in the prior case. The defense offered to stipulate to the status of Kirk-wood as a prior convicted felon. However, the State requested submission of a judgment and notice of criminal disposition into evidence, dated February 2004, where Kirkwood pleaded guilty to burglary of a building and was sentenced to seven years in the custody of the MDOC. A bench conference ensued. Over the objection of the defense to their relevancy, these documents were entered into evidence.
¶ 7. After the State rested its case, the trial court denied the defense’s motion for a directed verdict on all four counts. Kirkwood then testified in his own defense. His version of the events of October 11 are as follows. A friend picked him up in the blue and grey Safari van that morning with two other individuals. Kirkwood said his friend had had the van for a week. They all went to Smith’s trailer to buy crack cocaine.[1] He described Smith as a “friend.” Kirkwood purchased the drugs from Smith, smoked them, and returned to Smith’s trailer to buy more. When Smith was not there, Kirkwood called him to see when he would return. Two of his friends became impatient and went into the trailer “to get the dope,” against Kirkwood’s advice. Kirkwood claimed he then walked *12 down the street while his friends entered the trailer. He saw his friends exit the trailer “with a blanket with something in it.” Kirkwood said that during the high-speed chase, he was not driving, and that his three other companions were in the van with him. He claimed that he ran from the police on foot because he panicked and was paranoid from drug usage, and he wanted to dispose of the crack cocaine in the woods. He denied touching any of the items that were stolen from Smith’s trailer, contending that his prints would not be on them.
¶ 8. During cross-examination, the State queried Kirkwood about the fact he never mentioned in his statement to police about going to Smith’s trailer to buy drugs. But, Kirkwood claimed he was “telling the truth now.” Also, he admitted that he never attempted to get his companions, who were allegedly at the scene, to testify on his behalf. However, Kirkwood complained that he gave law enforcement the names of the two individuals whom he claims were responsible for the burglary, but allegedly, the police failed to investigate them. Kirkwood maintained his innocence regarding all of the charges. The prosecution also asked Kirkwood if he was a convicted felon, and Kirkwood responded that he had “committed a lot of crimes.” The prosecutor asked him to “list a few for us.” After Kirkwood responded that he had “committed a few burglaries,” his counsel objected. The court ruled that Kirkwood, however, had “opened the door” and overruled the objection. Upon continued questioning, Kirkwood thereafter cited numerous prior convictions in Florida for burglary, aggravated assault, and felony fleeing. After both parties finally rested, the defense renewed its motion for a directed verdict, which was denied.
¶ 9. During the jury instruction conference, Kirkwood requested a circumstantial-evidence instruction because he claimed three of the four charges had no direct evidence of his guilt. The trial court judge found the State had used direct proof on at least a portion of all four charges and denied the instruction. The defense also objected to the State’s amendment of its instruction to add “dwelling” before the word “house” regarding the elements of burglary of a dwelling house. The judge overruled the defense’s objection and granted the instruction.
¶ 10. On the morning of the second day of trial, the judge met with the prosecutor, defense counsel, and Kirkwood in chambers. It was brought to the judge’s attention that the prosecutor had failed to disclose that the State’s witness, Smith, had recently pleaded guilty to three counts of sale of cocaine and one count of possession of cocaine. The State did not apprise the defense of this fact until the end of the first day of trial, after both parties had rested. When the judge asked why the information had not been disclosed, the prosecutor stated that “it just didn’t occur to me to bring it up” and that he was unaware Kirkwood’s testimony would include allegations of a drug sale. The judge commented that the defense should have been made aware of the convictions sooner. He found the information “highly probative” in light of Kirkwood’s testimony regarding Smith’s sale of drugs, and expressed his concern about Mississippi Rule of Evidence 609.[2] The defense moved for a mistrial or, in the alternative, a proposed resolution reached by the parties wherein *13 Smith would be recalled to the stand for the limited purpose of cross-examination by the defense about his prior convictions. The defense further noted that, as part of the agreed resolution, “any error would be waived.” The court denied the mistrial but allowed the recall of Smith. The defense briefly cross-examined Smith, who admitted to pleading guilty to the drug charges.
¶ 11. The jury returned a verdict of guilty on all four counts. At the sentencing hearing, the court determined that Kirkwood was a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007); therefore, he received the maximum sentence for each count and is ineligible for parole or probation.[3]
¶ 12. Kirkwood filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied. He now appeals.
ANALYSIS OF THE ISSUES
¶ 18. Kirkwood raises eight issues on appeal. For the sake of judicial efficiency, we shall discuss related issues together.

1. Admission of Kirkwood’s Prior Felony Convictions

¶ 14. Kirkwood raises two issues regarding the admission of his prior felony convictions. First, he argues that the trial court erred in allowing the State to admit into evidence documents related to Kirk-wood’s prior Mississippi felony conviction of burglary of a building in order to prove he was a felon, even when the defense offered to stipulate to that fact during Officer Ramirez’s testimony. Second, Kirk-wood claims the trial court misapplied Mississippi Rule of Evidence 609 when Kirkwood testified about his prior felony convictions during his cross-examination. Specifically, Kirkwood argues that the trial court failed to perform a balancing test regarding the probative and prejudicial value of such testimony, and that he did not “open the door” for such testimony, as the trial judge ruled.
¶ 15. This Court’s review of the admission of evidence is limited. The standard of review for the admission or exclusion of evidence is an abuse of discretion. Williams v. State, 991 So.2d 593, 597(¶ 8) (Miss.2008) (citing Brown v. State, 969 So.2d 855, 860(¶ 13) (Miss.2007)). Therefore, “a trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse [the] ruling.” Id. (quoting Shaw v. State, 915 So.2d 442, 445(¶8) (Miss.2005)).

a. Prior Felony Conviction Admitted Duriny Officer Ramirez’s Examination

¶ 16. Evidence of one of Kirkwood’s prior felony convictions, which occurred in Coahoma County, Mississippi, was admitted during the State’s direct examination of Officer Ramirez in order to prove Kirk-wood was a felon. The following colloquy occurred:
BY MR. KIRKHAM [COUNSEL FOR THE STATE]: You also stated that you were familiar with the defendant. Are you aware if the defendant has ever been convicted of a felony crime before?
OFFICER RAMIREZ: Yes, sir.
*14 BY MR. SHACKLEFORD [COUNSEL FOR THE DEFENDANT]: And we will so stipulate that he has.
BY MR. KIRKHAM: Your Honor, the State would still submit what has been marked S-5(A) and S-5(B), a judgment and notice of criminal disposition.
BY MR. SHACKELFORD: May we approach the bench, Your Honor?
BY THE COURT: You may.
A bench conference followed. The defense counsel objected to the admission of the criminal disposition document for the conviction of burglary of a building, claiming it was irrelevant, but initially, the defense had “no objection” to the admission of the judgment. When asked by the judge if he had any additional objections, the defense counsel stated: “Yes. Only that we have stipulated and it is simply cumulative and has no bearing, has no relevance.” The judge then overruled the objection and admitted both documents into evidence.
¶ 17. The State claims the defense did not make a contemporaneous objection to Officer Ramirez’s testimony about Kirk-wood’s prior Mississippi felony conviction; therefore, the issue is waived. The record shows that while defense counsel did not immediately object to the question of how Officer Ramirez knew Kirkwood, defense counsel immediately offered to stipulate that Kirkwood was a convicted felon, rather than pursuing the details of the conviction. During the bench conference, while defense counsel did not initially object to the judgment of the prior conviction entered into evidence, he made a subsequent general objection to the admission of both documents, after again stating the defense would stipulate to that fact.
¶ 18. On appeal, Kirkwood relies on Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) for the proposition that since he offered to stipulate to his prior conviction, the specific nature of that crime, burglary of a building, did not need to be admitted into evidence and, thus, divulged to the jury, since it was similar to one of Kirkwood’s current charges, burglary of a dwelling. Old Chief held that the trial court abuses its discretion if it rejects the offer to stipulate and admits the full record of a prior judgment, when the name or nature of the prior offense may taint the verdict by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction. Id. at 174, 117 S.Ct. 644. In Old Chief, the trial court allowed the prosecution to present evidence of the defendant’s prior assault conviction to prove that he was a prior convicted felon in possession of a firearm. The decision turned on the fact that the defendant moved to stipulate that he was a prior convicted felon and thereby exclude any mention of his previous conviction. Id. at 186, 117 S.Ct. 644.
¶ 19. Kirkwood also cites Sawyer v. State, 2 So.3d 655, 660(¶ 28) (Miss.Ct.App. 2008), where this Court found facts identical to those in Old Chief. In Sawyer, the defendant, Charlie Sawyer, was charged with armed robbery and possession of a firearm by a convicted felon. Id. at 656(¶ 5). Sawyer moved to sever the charges or, in the alternative, to stipulate to his two prior felony convictions for armed robbery, so the jury could not infer that he was now guilty of armed robbery because of his two previous convictions for armed robbery. Id. at 658(¶ 13). This Court found that the trial court abused its discretion by either not severing Sawyer’s two counts or by making the prosecution accept Sawyer’s stipulation to prior felony convictions. Id. at 661(1130). This Court *15 applied Mississippi Rule of Evidence 403,[4] and similar to Old Chief, we held that the probative value of the prior armed robbery-convictions was “substantially outweighed by the danger of unfair prejudice because the jury would use Sawyer’s prior convictions as evidence in considering” his current armed robbery charge. Id. at 661(¶28) (citing M.R.E. 403). Accordingly, this Court reversed the judgment of the trial court and remanded the case for a new trial. Id.
¶ 20. Additionally, Kirkwood cites Williams for the same proposition. In Williams, the Mississippi Supreme Court found the trial court erred when it denied the defendant’s offer to stipulate to his prior conviction, but unlike Sawyer, the court found the error harmless in light of the overwhelming evidence of guilt. Id. at 606(¶ 43). Williams was charged with armed robbery, kidnapping, and possession of a firearm by a convicted felon. Id. at 596(111). He offered to stipulate to his prior conviction for armed robbery, arguing that introduction of this prior offense to prove the possession of a firearm by a felon charge would unfairly prejudice the jury to convict him of the armed robbery charge, citing Old Chief. Id. at 604(¶ 36). The trial court disagreed and denied Williams’s motion, but the court granted Williams’s limiting instruction to the jury, presumably explaining that the prior conviction should be considered only to determine the guilt for the possession of a firearm charge. Id. at 606(¶ 41). In finding the trial court’s denial of the offer to stipulate erroneous, the supreme court cited Old Chief, noting that the charge to which Williams offered to stipulate, armed robbery, was basically the same as the federal charge in Old Chief. Id.
¶ 21. In the case at bar, we note that this admission of a prior conviction was not used to impeach a witness under Mississippi Rule of Evidence 609 (as were the other felony convictions which will be discussed below). Instead, the prosecution was using Officer Ramirez’s testimony and the subsequent admission of court documents to prove Kirkwood’s status as a prior convicted felon for the felon in possession of a firearm charge, as in Old Chief, Sawyer, and Williams. Pursuant to the record, there was no pretrial motion to sever or stipulate, only the offer to stipulate made by defense counsel during the aforementioned colloquy. Nor was there a limiting jury instruction offered by the defense. We also note that at trial, defense counsel did not cite Old Chief or argue that the particular information regarding the prior crime would be unduly prejudicial; he just stated the prior conviction was “not relevant.” Of course, this prior conviction was very relevant to prove that Kirkwood was a prior felon for the felony fleeing and a felon in possession of a firearm. He did not object on the ground of prejudice because of the similarity of the prior crime to the current crime. However, our supreme court has stated that the prosecution must articulate a reason to deny a defendant’s offer to stipulate, showing why the probative value is not outweighed by the possible prejudice. Williams, 991 So.2d at 606(¶ 42). Thus, it was incumbent upon the prosecution to show a lack of prejudice in this case, which it did not do.
¶ 22. We find the trial court abused its discretion in not accepting Kirkwood’s offer to stipulate. While counsel did not stress the similarity of the prior crime to the present crime, the court had before it *16 the documents stating the nature of the prior crime. Once the judge became aware of the similar nature of the prior conviction, he should have accepted Kirk-wood’s stipulation. However, in Williams, the Mississippi Supreme Court held that such error may be deemed harmless when the accused’s conviction is supported by overwhelming evidence. Id. at 606(¶43).
¶ 23. The Mississippi Supreme Court, citing to the United States Supreme Court for authority, has stated that harmless error does not require automatic reversal of the conviction. Tran v. State, 962 So.2d 1237, 1246-47 (¶¶ 36-37) (Miss.2007) (citing Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The Supreme Court held:
Trial and appellate courts have the duty to be fair, not only to the defendant, but to the State as well. Harmless-error analysis is often necessary to prevent unfair prejudice to the State, and the State is certainly prejudiced where convictions are reversed based on errors which do not affect the substantial rights of the parties.
....
Harmless-errors are only those “which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless.... ”
Id. (internal citations omitted). Additionally, errors involving a defendant’s constitutional rights “may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.” Clark v. State, 891 So.2d 136, 142(¶29) (Miss.2004) (quoting Riddley v. State, 777 So.2d 31, 35(¶ 11) (Miss.2000)). When conducting a harmless-error analysis, this Court has a “duty to review the record de novo in order to determine the error’s effect.” Tran, 962 So.2d at 1247(¶ 37) (citing Arizona v. Ful-minante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
¶ 24. Here, after a thorough review of the record, we find the trial court’s denial of Kirkwood’s offer to stipulate to his prior felony for burglary of a building was harmless error in light of the overwhelming weight of the evidence pointing toward Kirkwood’s guilt of this charge. The deadbolt lock to Smith’s trailer was found broken, and the back door was open upon Smith’s return. Kirkwood had called Smith to find out the time of his return from Memphis. Officer Poer testified he saw a van matching the description and tag number of a stolen blue and grey van in the vicinity. While Kirkwood testified that the real culprits were driving the van and escaped on foot, Officer Poer stated Kirkwood was driving the van. Kirkwood refused to pull the van over for Officer Poer, led the officer on a high-speed chase, and then attempted to evade him on foot. Office Poer testified that found inside the van were several rifles, a briefcase, and some scanners; these items were the same items Smith had reported missing from his trailer. He also testified that the only other person in the van was a hearing-disabled female. In light of the overwhelming weight of the evidence, we find the trial court’s error in refusing to accept Kirkwood’s offer to stipulate was harmless.

b. Admission of Prior Felony Convictions During Kirkwood’s Testimony under Mississippi Rule of Evidence 609(a)(1)(B)

 ¶ 25. Kirkwood also claims that the trial court erred in requiring him to testify during his cross-examination about his prior felony convictions in Florida because of their prejudicial nature. During Kirkwood’s cross-examination by the State, the following colloquy took place:
*17 BY MR. KIRKWOOD: I didn’t touch the guns period. If they took the prints they would have found Earnest Woods’s[5] prints on the gun; not my prints. If they had took [sic] the prints, if they followed procedure.
BY MR. KIRKHAM [COUNSEL FOR
THE STATE]: You’re an expert on police procedure now?
A: No sir. I know that much, sir.
Q: [Y]ou are a convicted felon; are you not?
A: Yes, sir, I am.
Q: In fact, you’ve committed burglary before; haven’t you?
A: I’ve committed a lot of crimes. I was a drug addict.
Q: I’m sorry?
A: I committed a great deal of crimes from doing drugs, sir.
Q: What kind of crimes?
A: All kinds.
Q: Well, why don’t you list a few for us?
A: I committed a few burglaries.
BY MR. SHACKELFORD [COUNSEL FOR THE DEFENDANT]: I object to this. I don’t think that going into his prior crimes—
BY THE COURT: — I’m going to overrule. He opened it up.
BY MR. KIRKHAM: And where was that?
BY MR. KIRKWOOD: That was in Florida.
Q: In Florida. Any other crimes in Florida aside from burglaries?
A: No, sir.
Q: No? You never committed an aggravated assault.
A: Yes, I did. Yes.
Q: You did. You’ve also been convicted of fleeing before; haven’t you?
A: Yes, sir.
Q: Seven different convictions in Florida for burglary. Is that right?
[[Image here]]
Q: One for aggravated assault, another for burglary of a dwelling here, and Anally another felony fleeing in Florida. Does that about sum it up?
A: Yes, sir.
Kirkwood argues the trial court erred in failing to conduct an on-the-record balancing test of the probative value of the evidence weighed against its prejudicial effect under Mississippi Rule of Evidence 609(a)(1)(B). Kirkwood also contends that he did not “open the door” to this examination of his prior convictions, as the trial judge determined.
¶ 26. Mississippi Rule of Evidence 609(a)(1) allows the introduction of prior crimes for the limited purpose of attacking the credibility of a witness. Before the evidence of a prior conviction is introduced, the court must determine “that the probative value of admitting this evidence outweighs its prejudicial effect to the party....” M.R.E. 609(a)(1)(B). In Peterson v. State, 518 So.2d 632, 636 (Miss.1987), the Mississippi Supreme Court held that pursuant to Rule 609, the trial court is required to make this determination on the record “before admitting the impeachment evidence of a party’s prior conviction.” The Peterson court listed the following factors the trial court is to consider when weighing the probative value of the acts against their prejudicial effect: (1) the impeachment value of the prior crime, (2) the point in time of the conviction and the *18 witness’s subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant’s testimony, and (5) the centrality of the credibility issue. Peterson, 518 So.2d at 637.
¶ 27. In the instant case, the trial judge did not perform an on-the-record balancing test, as required by Peterson; he rejected the defense’s general objection outright. We also note that the defense did not request a Peterson balancing test at the time, nor did the defense object to the lack of one at the time or in the post-trial motions. Defense counsel did not object to the line of questioning until after Kirk-wood had testified that he was a convicted felon, who had committed “a lot of crimes .... all kinds,” and admitted he had “committed a few burglaries.”
¶ 28. The State contends that Kirkwood waived this issue because he did not specifically raise it before the trial court. We agree with the State to the extent that Kirkwood waived the error up to the point of the objection. It is well established that the failure to make a contemporaneous objection waives the error on appeal. Smith v. State, 797 So.2d 854, 856(¶7) (Miss.2001) (citing Walker v. State, 671 So.2d 581, 597 (Miss.1995)).
¶ 29. Kirkwood’s counsel did not promptly object to this line of questioning until after Kirkwood had admitted to several burglaries. We do not agree with the trial judge’s ruling that Kirkwood “opened the door” to this line of questioning either during direct or cross-examination. Kirk-wood did, however, bring up the subject of his prior convictions by complaining that if law enforcement had followed proper procedure and taken his fingerprints, they would have known he did not touch any of the stolen items-specifically, the guns.
¶ 30. According to Peterson, the trial judge should have halted the line of questioning once Kirkwood objected and then conducted a balancing test. However, the supreme court has specifically ruled that even when the trial judge errs in not conducting an on-the-record Peterson analysis and, thus, erroneously admits evidence of prior felonies, the contested testimony can constitute harmless error because of the overwhelming weight of the evidence against the accused. DeLoach v. State, 722 So.2d 512, 520(¶ 34) (Miss.1998). The DeLoach court explains that the inquiry is “whether it appears ‘beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’ ” Id. (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824). Further, it “is not whether the jury considered the improper evidence or law at all, but rather, whether that error was ‘unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.’ ” Id. (quoting Yates v. Evatt, 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)).
¶ 31. We have such a situation here. We note that prior to the defense counsel’s objection, Kirkwood had already admitted to “a lot of crimes” including “a few burglaries.” Of the two additional crimes to which he testified following the objection, only one, felony fleeing, is similar to any of the current crimes for which Kirkwood was prosecuted. However, due to the overwhelming weight of the evidence presented to the jury for this charge, the error is harmless. Officer Poer saw Kirk-wood driving the stolen van in Clarksdale. Officer Poer tried to pull Kirkwood over, but he did not stop. Officer Poer testified a high-speed chase ensued and was followed by a foot chase. Kirkwood was finally apprehended in a field. The weight of the evidence against Kirkwood on the fleeing charge was overwhelming.

*19
2. Sufficiency and Weight of the Evidence of Grand Larceny

¶ 32. Kirkwood contends that the State did not present sufficient evidence that the value of the 1991 Safari van was $500 or more, thereby requiring his conviction of grand larceny be reversed and rendered. Further, he claims his conviction for grand larceny is against the overwhelming weight of the evidence. Kirk-wood filed a motion for a JNOV or, in the alternative, a new trial, which was denied by the trial court. However, Kirkwood did not specifically raise an issue about the value of the van in his motion. The trial court also denied directed verdicts both at the end of the State’s case-in-chief and after both parties finally rested.
¶ 33. A motion for a directed verdict and a JNOV both challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If the facts and inferences “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” this Court must reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if the evidence is such that, “ ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id.
¶ 34. A motion for a new trial disputes the weight of the evidence. Id. at 844(¶ 18). This Court will disturb a verdict only “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). This Court will review the evidence in the light most favorable to the verdict. Id.
¶ 35. Kirkwood only contests the value of the van for the crime of grand larceny in this issue. Under Mississippi Code Annotated section 97-17-41 (Rev.2006), a person is guilty of grand larceny for “taking and carrying away, feloniously, the personal property of another” with “the value” of $500 or more. Considering the evidence in the light most favorable to the State, the jury could find this element beyond a reasonable doubt. Kirkwood argues that the State did not meet this burden of proof because the “value” of the van presented at trial was not the market value at the time of the crime, but the purchase price when the' owner bought it. Thus, the jury had to speculate as to its market value, and there was not sufficient evidence to find it worth $500. He contends the market value of the van would be below $500, because vehicles depreciate greatly over time, and this van was in extreme disrepair.
¶ 36. While we agree that the State did not present any direct evidence as to the value of the van, and the amount of money paid for the vehicle is not evidence of its market value at the time of the crime, we find that this argument is without merit. The owner of the van testified he had purchased the van “several years ago” for $8,000. He testified he was still driving the van at the time of the trial, and it had “a good motor and transmission.” While the two photographs of the van that were entered into evidence do not show that the van is in pristine condition, a jury could *20 certainly infer from the photographs and the owner’s testimony that the van would be worth at least $500.
¶ 37. This Court made a similar ruling in Smith v. State, 881 So.2d 908, 910-11(¶ 11) (Miss.Ct.App.2004), where we affirmed a conviction of grand larceny when there was no direct testimony of the value of certain truck rims. Instead of direct evidence of the market value of the rims, the victim’s father testified to the amount he paid to purchase the rims, and this Court found that sufficient. Id. In the instant case, a reasonable, fair-minded juror could find beyond a reasonable doubt that the van was worth at least $500, and that Kirkwood was guilty of grand larceny of the van. Officer Poer testified he saw Kirkwood driving the van which had been reported as stolen, and when law enforcement stopped the van, Kirkwood exited the van and ran into the woods. Furthermore, we cannot say that upholding Kirkwood’s conviction of grand larceny is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Accordingly, we find that this issue is without merit.

3. Jury Instructions

¶ 38. Kirkwood argues the trial court erred in denying the defense a circumstantial-evidence jury instruction and a peremptory jury instruction regarding the burglary of a dwelling charge. The standard of review for jury instructions is well established:
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error “if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.”
Rubenstein v. State, 941 So.2d 735, 784-85 (¶ 224) (Miss.2006) (internal citations omitted). The standard of review for peremptory instructions is the same as for motions for a directed verdict and a JNOV, which all challenge the sufficiency of the evidence. Easter v. State, 878 So.2d 10, 21 (¶ 36) (Miss.2004) (citing Jefferson v. State, 818 So.2d 1099, 1110-11(¶ 30) (Miss.2002)). The standard of review for the sufficiency of the evidence was discussed in the previous issue; so it will not be repeated here.

a. Denial of Kirkwood’s Request for a Circumstantial-Evidence Jury Instruction

¶ 39. Kirkwood bases his argument on the colloquy in chambers during the jury-instruction conference, wherein defense counsel argued that three of the four charges were proven with circumstantial evidence. For the burglary charge, Kirkwood claims that there is only circumstantial evidence related to the identity of the perpetrator. Regarding the felony fleeing charge, Kirkwood concedes there is direct proof. For the felon in possession of firearms charge, Kirkwood argued the circumstantial-evidence portion of proof was that he had no knowledge the firearms were in the van, and there was direct evidence of his lack of knowledge. Finally, for the grand larceny charge, Kirkwood argued there is only circumstantial evidence he was in possession of the vehicle, and while the jury could infer that he stole it, that is not direct evidence. On appeal, Kirkwood apparently concedes there is direct evidence for the felon in possession of firearms charge, as he makes no argument in his brief for this charge; so, the only crimes at issue are burglary and grand larceny.
*21 ¶40. The long-standing rule regarding circumstantial-evidence jury instructions is that “[w]here all of the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict.” Manning v. State, 735 So.2d 323, 338(¶ 25) (Miss.1999) (quoting Givens v. State, 618 So.2d 1313, 1318 (Miss.1993)). “Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist. Conversely, eyewitness testimony is thought of as direct evidence. Direct evidence may also consist of a confession by a defendant, including the defendant’s admission to a person other than a law enforcement officer.” Id. A circumstantial-evidence instruction is required “only when the prosecution can produce neither an eyewitness nor a confession/statement by the defendant.” Hughes v. State, 983 So.2d 270, 278(¶26) (Miss.2008) (quoting Rubenstein, 941 So.2d at 785 (¶ 225)). This Court has further noted that direct evidence that a crime was committed, without direct evidence that the defendant committed the crime, is not enough to defeat a circumstantial-evidence instruction. Turner v. State, 945 So.2d 992, 1002(¶ 33) (Miss.Ct.App.2007) (citing Price v. State, 749 So.2d 1188, 1194(¶ 16) (Miss.Ct.App.1999)).
¶ 41. Kirkwood argues that since portions of the burglary and grand larceny charges involve circumstantial, and not direct, evidence, a circumstantial-evidence jury instruction would have been proper. He fails to recognize that all of the evidence of the crime must be circumstantial to warrant this jury instruction. It is well established that a “circumstantial evidence jury instruction is not required unless on the central elements of the offense ‘the evidence for the prosecution is wholly circumstantial.’” Starks v. State, 798 So.2d 562, 565(¶ 10) (Miss.Ct.App.2001) (quoting Keys v. State, 478 So.2d 266, 267 (1985)). “[T]he State’s case is not wholly circumstantial when there is a mix of direct and circumstantial evidence.” Long v. State, 934 So.2d 313, 317(¶ 17) (Miss.Ct.App.2006) (citing Sheffield v. State, 749 So.2d 123, 126(¶ 12) (Miss.1999)). Therefore, “[t]he existence of any direct evidence eliminates the need for a circumstantial evidence instruction.” Starks, 798 So.2d at 566(¶ 13) (quoting Sullivan v. State, 749 So.2d 983, 992(¶ 20) (Miss.1999)) (emphasis added).
¶ 42. In the instant case, there was direct evidence of the burglary of Smith’s dwelling and the grand larceny of the van. Kirkwood testified that his version of the events was his companions picked him up in the van and went to Smith’s trailer to buy drugs. They later returned to the trailer to buy more drugs, but Smith was not home. Kirkwood claimed he told his friends not to enter the trailer, but they did anyway. They exited with the trailer with “a blanket with something in it.” Kirkwood testified he had walked down the street, and his friends picked him up, and they then continued smoking crack. Although Kirkwood claimed he was not driving the van and his three other friends were with him during the high-speed chase, Officer Poer gave eyewitness testimony that Kirkwood was driving the van; there was only one other individual in the van — the woman; and stolen property was found inside the van once it was stopped. Accordingly, each of these charges have portions of direct evidence, thus a circumstantial-evidence jury instruction would not have been appropriate. We find no error committed by the trial court in denying Kirkwood’s request for one.

*22
b. Denial of Kirkwood’s Request for a Peremptory Instruction

¶43. Kirkwood claims the trial court “erred in denying defense counsel’s peremptory instruction when the State failed to provide sufficient evidence that the building in question was a dwelling house.” However, according to the record, Kirkwood did not request a peremptory instruction; he merely objected to the State’s attempt to amend its own instructions (S-l), renamed C-10 after amendment by the trial court, which gave the elements for each of the four counts in the indictment. The State requested that they add the word “dwelling” before the word “house” in the part of the instruction describing the elements of burglary of a dwelling house. The judge had no objection to the amendment because the language more closely tracked the indictment, but defense counsel objected, explaining that he did not. “think that [the] house was used as [Smith’s] dwelling. I object to the redundance, if nothing else. It is more peremptory so I would object to that.” Apparently, defense counsel felt the addition of the word “dwelling” would make the instruction peremptory. The final pertinent language of the jury instruction read: “As to Count I, if you find from the evidence in this case beyond a reasonable doubt that: (1) a dwelling house located at 944 Oak Ridge in Friars Point, Mississippi, was used by W.C. Smith as his dwelling ... then you shall find the Defendant ... guilty of Burglary of a Dwelling in Count I.” The judge promptly overruled the defense’s objection.
¶ 44. Kirkwood argues that the State presents no evidence that Smith’s trailer was actually his “dwelling house” under the pertinent statute, Mississippi Code Annotated section 97-17-23 (Supp.2009), which states:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
Kirkwood maintains that the trailer does not fit the requirement of a dwelling house under the statute because it was not Smith’s permanent residence, and Smith was not residing there when the burglary occurred.
¶45. The law regarding this statute is clear that the structure broken into must be used as a residence at the time of the crime. Wilkerson v. State, 724 So.2d 1089, 1092-93 (¶¶ 17-18) (Miss.Ct.App.1998). The material consideration of whether a place is considered a dwelling house is the intention of the residents. Id. at 1092(¶ 17) (citing Robinson v. State, 364 So.2d 1131, 1134 (Miss.1978)). The victim’s presence in the house at the time of the burglary is not required to convict under the statute. Id. at 1093(¶ 18). A temporary absence by the residents from the dwelling, even for a long duration, does not deprive the structure of its status as a dwelling house if they have the intent to return and live there. Carr v. State, 770 So.2d 1025, 1029(¶ 14) (Miss.Ct.App.2000) (citing Course v. State, 469 So.2d 80, 82 (Miss.1985)). Furthermore, “a person may simultaneously have two dwellings subject to burglary and sometimes reside with his family in one and sometimes in the other. The breach of one of them in the absence of his family would still be burglary.” Washington v. State, 753 So.2d 475, 477(¶ 9) (Miss.Ct.App.1999) (quoting Gil- *23 lum v. State, 468 So.2d 856, 859 (Miss.1985)).
¶ 46. In this case, Smith admitted that he owns another home on Walnut Street, and he does not sleep at the trailer all of the time, but “[s]ometimes ... most every other night.” He stated he also uses the trailer for an office and a shop. His daughter actually owns the trailer, and he does not claim it as a homestead exemption, but he owns the land it is on. He keeps clothes and personal belongings at the trailer, and while he did not sleep there the night before the trial, he intends “to go back there” at some point.
¶ 47. Kirkwood relies on Course, where the owner of the house went to a nursing home in August, and her house was burglarized in October. Course, 469 So.2d at 81. Yet, her personal possessions remained in the house, and she intended to return to it once her health improved. Id. at 82. The supreme court found the owner’s house maintained the status of a dwelling during her stay in the nursing home. Id. In the instant case, the jury could have reasonably found Smith resided in both his Walnut Street home and in the trailer. While the trailer had other purposes as a shop and office, this fact did not prevent the trailer from being a dwelling. He had personal possessions at the trailer and the intent to live there, even if not full time. We find sufficient evidence to show the trailer was Smith’s “dwelling house” under section 97-17-23; thus, there was no error in the trial court’s grant of the State’s amendment to the jury instruction at issue.

4. Cumulative Error

¶48. Kirkwood argues he was denied his constitutional right to a fair trial because of the cumulative effect of the alleged errors at trial. He claims that these errors cannot be considered harmless. Specifically, he cites the admission of his prior convictions both during Officer Ramirez’s testimony and his own, as well as the lack of a circumstantial-evidence jury instruction.
¶ 49. Kirkwood is correct in stating that the cumulative-error doctrine stems from the harmless-error doctrine. Ross v. State, 954 So.2d 968, 1018 (¶ 138) (Miss.2007) (citing M.R.C.P. 61). Further, individual errors, even though not reversible in themselves, may combine with other errors to cause reversible error, where the cumulative effect of the errors deprives the defendant of a fundamentally fair trial. Id. (citing Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003)). Relevant factors to consider in determining whether an error was harmless or prejudicial in order to evaluate a claim for cumulative error include “whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged.” Id.
¶ 50. In this case, the issue of innocence or guilt was not close. There was overwhelming evidence Kirkwood was guilty of all the charges. The errors regarding the admission of Kirkwood’s prior felonies were harmless. Finally, Kirkwood’s crimes were not particularly grave — they were not crimes of violence against individuals. We conclude that neither of the errors would have violated Kirkwood’s right to a fair trial.
CONCLUSION
¶ 51. We find no error justifying reversal in this case. Therefore, we affirm Kirkwood’s convictions and sentences.
¶ 52. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING HOUSE, AND SENTENCE OF *24 TWENTY-FIVE YEARS; COUNT II, FELONY FLEEING, AND SENTENCE OF FIVE YEARS; COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS; AND COUNT IV, GRAND LARCENY, AND SENTENCE OF TEN YEARS, AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J„ CONCURS IN PART AND IN THE RESULT.

. Kirkwood also admitted to being a drug addict.

. Mississippi Rule of Evidence 609(a)(1) states that "[f]or the purpose of attacking the character for truthfulness of a witness,” evidence that a nonparty witness has been convicted of a felony shall be admitted, subject to Mississippi Rule of Evidence 403, if the court determines the probative value outweighs its prejudicial effect.

. The court noted that immediately following the announcement of the jury’s verdict, Kirk-wood escaped the custody of the sheriff as he was being escorted out of the courtroom and, therefore, "voluntarily absent[ed]" himself from the courthouse and sentencing proceedings.

. Mississippi Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....”

. Woods was allegedly one of the individuals with Kirkwood in the van who went to Smith’s trailer.